IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DARRELL D.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 20-2601** |
| **v.** | * | |
| | * | |
| | * | |
| **KILOLO KIJAKAZI,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.[1]** | * | |

\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Plaintiff Darrell D. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a

final decision of the Acting Commissioner of Social Security ("Defendant" or the

"Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment

and alternative motion for remand (ECF No. 14) and Defendant's Motion for Summary

Judgment (ECF No. 19).[2]  Plaintiff contends that the administrative record does not contain

substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.  She is,
therefore, substituted as Defendant in this matter.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

**I**

**<u>Background</u>**

On January 4, 2016, Plaintiff protectively filed an application for SSI, alleging disability beginning on October 22, 2015.  R. at 11.  After the Commissioner denied Plaintiff's claim initially and on reconsideration, he requested a hearing.  R. at 11.  On July 10, 2019, Administrative Law Judge ("ALJ") Beverly Susler Parkhurst held a video hearing where Plaintiff, a witness, and a vocational expert ("VE") testified.  R. at 40-110.  The ALJ thereafter found on September 30, 2019, that Plaintiff was not disabled since January 4, 2016.  R. at 8-32. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since January 4, 2016, and that he had severe impairments.  R. at 14-17.  He did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 17-18.  In comparing the severity of Plaintiff's mental impairments to the listed impairments, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself.  R. at 14.  Plaintiff's medically determinable mental impairments were thus not severe.  R. at 16.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

to perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] can lift and carry up to 50 pounds occasionally and 25 pounds frequently.  He can sit, stand and/or walk up to 6 hours each in an 8-hour day.  [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch and crawl.

R. at 18.[3]   In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could

perform his past relevant work as a laundry worker and store laborer.  R. at 23-24.  The ALJ thus

found that Plaintiff was not disabled since January 4, 2016.  R. at 24.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on

September 9, 2020, a complaint in this Court seeking review of the Commissioner's decision.

Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final

disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties

have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country."    42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

S. Ct. 376, 379-80 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1522(b), 416.922(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.

*Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

## Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security

Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-15,

ECF No. 14-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function

assessment of his ability to perform the physical and mental demands of work.  *Id.* at 5.  In

particular, he argues that the ALJ failed to evaluate properly the opinions of Dr. Osia, his treating

physician.  *Id.* at 5-13.  According to Plaintiff, the ALJ also failed to explain how she found that

he had no limitations on his abilities to sit, stand, or walk.  *Id.* at 13-14.  Plaintiff further argues

that the ALJ failed to explain how he would be capable of sustaining work-related activities for

eight hours per day and five days per week.  *Id.* at 15.  Plaintiff also asserts that the ALJ

erroneously evaluated his subjective complaints.  *Id.* at 15-19.  He finally argues that the ALJ

failed to follow the special technique for evaluating mental impairments under 20 C.F.R.

§ 416.920a.  *Id.* at 19-23.  For the reasons discussed below, the Court remands this case for

further proceedings.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

Plaintiff first argues that the ALJ erred in assessing his RFC.  *Id.* at 3-15.  SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote and citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ

erroneously expressed claimant's RFC first and then concluded that limitations caused by

claimant's impairments were consistent with that RFC).

Plaintiff maintains that the ALJ failed to evaluate properly the opinions of Sisom Osia,

M.D., his treating physician.  Pl.'s Mem. Supp. Mot. Summ. J. 5-13, ECF No. 14-1.  The ALJ

stated in her decision:

> The undersigned did consider the opinions from Dr. Osia and gave them
> little weight. . . . These opinions are all vague.  None seemed based on Dr. Osia's
> own observed function. . . . In his most recent opinion, he stated that [Plaintiff]
> was likely to remain out of work for 2 months due to "multiple health issues."
> This opinion is again vague, contains no function-by-function analysis and is not
> consistent with any of Dr. Osia's observations of normal physical function from
> March and May 2019 physical examinations.

R. at 21.

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards
> for evaluating medical opinion evidence are set forth in 20 C.F.R. [§ 416.927].
> That regulation defines "medical opinions" as "statements from acceptable
> medical sources that reflect judgments about the nature and severity of your
> impairment(s), including your symptoms, diagnosis and prognosis, what you can
> still do despite impairment(s), and your physical or mental restrictions."  For
> purposes of the regulation, an "acceptable medical source" includes a licensed
> physician or psychologist.  The regulation provides that the ALJ "will evaluate
> every medical opinion" presented to him, "[r]egardless of its source."  Generally,
> however, more weight is given "to the medical opinion of a source who has
> examined you than to the medical opinion of a medical source who has not
> examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (alteration in original)

(citations omitted); *see* 20 C.F.R. §§ 404.1527, 416.927.

> Section [416.927(c)(2)] sets out two rules an ALJ must follow when
> evaluating a medical opinion from a treating physician.  First, it establishes the
> "treating physician rule," under which the medical opinion of a treating physician
> is entitled to "controlling weight" if it is "well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent with the other
> substantial evidence in [the] case record."  Second, if a medical opinion is not
> entitled to controlling weight under the treating physician rule, an ALJ must
> consider each of the following factors to determine the weight the opinion should
> be afforded: (1) the "[l]ength of the treatment relationship and the frequency of

examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2)(i)-(6), 416.927(c)(2)(i)-(6).  While "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion."  *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that she had considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927.  R. at 18.  However, even if Dr. Osia's opinions were not entitled to controlling weight, it does not appear that the ALJ meaningfully considered each of the factors under § 416.927(c) before deciding how much weight to give his opinions.  *See Dowling*, 986 F.3d at 385; *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020).  Although it seems that the ALJ considered the consistency of Dr. Osia's opinions with the record as a whole and their supportability (R. at 21), the ALJ apparently did not consider the length, nature, and extent of Dr. Osia's treatment relationship; the frequency of the doctor's examination of Plaintiff; the doctor's specialization; and other factors under 20 C.F.R. § 416.927(c)(6), such as Dr. Osia's understanding of disability programs and their evidentiary requirements and the extent of his familiarity with the other information in Plaintiff's case record.  The ALJ "never so much as hinted that [her] discretion was checked by the factors enumerated in [§ 416.927(c)], which it is.  In failing to acknowledge and apply each of these six

factors, the ALJ erred." *Dowling*, 986 F.3d 385-86.  Remand is thus warranted for these reasons.

*See id.* at 386 ("Two of the factors ignored by the ALJ -- those which relate to the length,

frequency, nature, and extent of [the claimant's] treatment relationship with [her treating

physician] -- appear to cut in [the claimant's] favor. . . . Had the ALJ properly considered the

treatment relationship between [the treating physician] and [the claimant], he may not have been

so quick to reject [the treating physician's] medical opinion.  This is significant, because if the

ALJ had accorded greater weight to [the treating physician's] opinion that [the claimant] was

incapable of sitting for even two hours total in an eight-hour working day and that she frequently

experienced pain so severe that it interfered with her attention and concentration, this reasonably

could have altered the ALJ's conclusion that [the claimant] was capable of performing sedentary

work.").

In addition, "[t]he failure to consider each of the 20 C.F.R. [§ 416.927(c)] factors was not

the only error committed by the ALJ.  The ALJ was also required to assess [Plaintiff's] RFC

when determining [his] disability status." *Id.*  The ALJ stated that, in assessing Plaintiff's RFC,

she had "considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on the

requirements of 20 CFR 416.929 and SSR 16-3p." R. at 18.  As noted above, every conclusion

reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative

discussion describing the evidence that supports it. *Dowling*, 986 F.3d at 387.  Here, although

the ALJ acknowledged 20 C.F.R. § 416.945 and SSR 96-8p (R. at 13), "the ALJ did not indicate

that [her] RFC assessment was rooted in a function-by-function analysis of how [Plaintiff's]

impairments impacted [his] ability to work." *Id.*  Rather, the ALJ's RFC assessment was based

on SSR 16-3p, which sets out the process ALJs use to evaluate the intensity and persistence of a

claimant's symptoms and to determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *See id.* (citing SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)).  "Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation."  *Id.* (citing 20 C.F.R. § 416.945(a)(3)).  "But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same."  *Id.*

"The ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment" that requires the Court to remand this case.  *Id.* at 388.  "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).  The ALJ in this case, however, "began with step three, noting at the outset of [her] RFC evaluation that [Plaintiff] only '[has] the residual functional capacity to perform [medium] work'" (R. at 18).  *Dowling*, 986 F.3d at 388.  "Only then did the ALJ identify evidence and attempt to explain how that evidence logically supported [her] predetermined conclusion" (R. at 18-22).  *Id.*  The ALJ thus erred in stating Plaintiff's RFC first and then concluding that the limitations caused by his impairments were consistent with that RFC.  *See Thomas*, 916 F.3d at 312; *Monroe*, 826 F.3d at 188.  Although the Fourth Circuit has declined to impose a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, "the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis."  *Dowling*, 986 F.3d at 388.  The Court finds that remand is also appropriate here because of the ALJ's failure to engage in a function-by-function analysis.  *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [the claimant] could perform 'medium work'

and summarized evidence that he found credible, useful, and consistent.  But the ALJ never explained how he concluded—*based on this evidence*—that [the claimant] could actually perform the tasks required by 'medium work,' such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours." (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983))).

In sum, the ALJ "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'"  *Id.* (second alteration in original) (quoting *Monroe*, 826 F.3d at 189).  An ALJ's failure to do so constitutes reversible error.  *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017).  Because the ALJ's failure to engage in a function-by-function analysis frustrates meaningful review, the Court remands this case for further proceedings.  *See Thomas*, 916 F.3d at 311.

Because the Court remands this case on other grounds, the Court need not address Plaintiff's remaining arguments.  In any event, the ALJ also should address these other issues raised by Plaintiff.  *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues.").

## V

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.  Defendant's final decision is

**REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for

further proceedings consistent with this opinion.  A separate order will issue.


Date: December 9, 2021                                      /s/
                                                Thomas M. DiGirolamo
                                                United States Magistrate Judge